THOMPSON, Judge,
dissenting.
Even assuming that the Faulks did not own the automobile involved in the accident, I believe the summary judgment was correct. Therefore, I respectfully dissent.
I believe that it is clear that Stamps is an underinsured motorist, rather than an uninsured motorist. I also believe that Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d 160 (Ala.1991), is controlling in this action and that the trial court correctly applied the guidelines set forth therein. In Lambert, the Supreme Court of Alabama stated: “In this opinion, we set out the procedure that should be followed in every case in which the rights of the insured and the underinsured motorist insurance carrier may conflict.” 576 So.2d at 167 (emphasis added).
This action is such a ease. The Supreme Court of Alabama stated:
“These general guidelines should be applied with the understanding that the purpose of consent-to-settle clauses in the uninsured/underinsured motorist insurance context is to protect the underinsured motorist insurance carrier’s subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the *5 tort-feasor’s liability insurer at the carrier’s expense.”
Lambert, 576 So.2d at 167.
The guidelines that the Supreme Court of Alabama set forth to govern the protection of the interests of both the insured and the uninsured/underinsured motorist carrier are as follows:
“(1) The insured, or the insured’s counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured’s damages may exceed the tort-feasor’s limits of liability coverage.
“(2) If the tort-feasor’s liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured’s claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
“(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor’s intent to settle, the insured should also inform the carrier as to whether the insured will seek underin-sured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the un-derinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
“(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured’s claim and to notify its insured of its proposed action.
“(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tort-feasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tort-feasor’s insurer.
“(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier’s insured, advance to its insured an amount equal to the tort-feasor’s settlement offer.”
Lambert, 576 So.2d at 167.
In Jones v. Allstate Ins. Co., 601 So.2d 989, 990 (Ala.1992), our supreme court discussed the application of Lambert, noting that the court had been “refining and balancing the rights of the insured and the insurer when underinsured motorist claims are involved, since United Services Automobile Association v. Allen, 519 So.2d 506 (Ala.1988).” In Jones, the Supreme Court affirmed a summary judgment entered in favor of Allstate Insurance Company after the plaintiff had settled with an underinsured motorist without notifying Allstate about the proposed settlement and the terms of the release. In the ease before us, the Faulks settled not with the motorist who injured them, but with the owner of the vehicle. The purpose of Alabama’s Motor Vehicle Safety-Responsibility Act is to provide “for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.” § 32-7-23(a), Ala.Code 1975 (emphasis added). In light of that purpose, I believe that the procedures outlined in Lambert are equally applicable when an insured undertakes a settlement with the owner of an underinsured vehicle. The Humphrey and Clem cases were decided before Alabama law included underinsured vehicles within the term “uninsured motor vehicles,” and they *6 involved settlements with insured tortfeasors who neither owned nor operated the uninsured vehicles. The Faulks settled with Sta-ville and Progressive in December 1993; they did not notify MIC about the settlement until November 1994. They did not comply either with the unambiguous policy conditions or with the Lambert procedures.
I believe the trial court correctly concluded that the Faulks’ ignorance of the existence of the underinsured motorist coverage available through MIC is irrelevant and that their failure to comply with the policy provisions and the Lambert guidelines precludes under-insured motorist coverage. I would affirm the summary judgment; therefore, I dissent.
CRAWLEY, J., concurs.